IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-63-BO

KERNAN MANION, M.D.,                          )
                                              )
                        Plaintiff,            )
                                              )
v.                                            )
                                              )
NORTH CAROLINA MEDICAL BOARD;                 )
NORTH CAROLINA PHYSICIANS                     )
HEALTH PROGRAM, INC.; NORTH                   )
CAROLINA MEDICAL SOCIETY;                     )
WARREN PENDERGAST, M.D.; R.                   )        O R D E R
DAVID HENDERSON; SCOTT G.                     )
KIRBY, M.D.; PASCAL UDEKWU, M.D.;             )
and GREGORY W. TAYLOR, M.D., each             )
in his or her individual and official capacity; )
and CHERYL WALKER-MCGILL, M.D.;               )
PAUL S. CAMNITZ, M.D.; WILLIAM A.             )
WALKER, M.D.; RALPH C. LOOMIS,                )
M.D.; JANICE E. HUFF, M.D.; and               )
DAVID D. COLLINS, M.D., each in his or        )
her individual capacity,                      )
                                              )
                        Defendants.           )

        This cause comes before the Court on three motions to dismiss by defendants. The

appropriate responses and replies have been filed and the matters are ripe for ruling. A hearing

was held on the motions before the undersigned on August 2, 2016, at Raleigh, North Carolina.

For the reasons discussed below, the motions to dismiss are granted.

## BACKGROUND

        Plaintiff has alleged the following in his complaint. Plaintiff, Dr. Manion, is a board

certified psychiatrist who has been practicing medicine for approximately thirty years, having

been licensed in Louisiana, Colorado, Massachusetts, and North Carolina. As is relevant here,

Dr. Manion was licensed by the State of North Carolina on April 17, 2002, and maintained an active license in good standing until February 9, 2013.

In September 2009, Dr. Manion was dismissed from his position as a civilian contract clinical psychiatrist at the Deployment Health Center at the Naval Hospital at Camp Lejeune, and thereafter filed suit for retaliatory discharge against his employers. Dr. Manion alleges that following his filing of suit against the Navy he experienced a series of events, including being followed and experiencing noxious odors and low frequency noises at his home and workplace, which led him to believe he was being harassed for filing the civil action. In late 2010, Dr. Manion took his concerns to the Chief of the Wilmington, North Carolina Police, who encouraged him to speak with a detective.

After speaking with the detective, Dr. Manion was contacted by the by the North Carolina Medical Board (Medical Board), which informed Dr. Manion that someone from the Wilmington Police Department had expressed concern about Dr. Manion's mental health and that the Medical Board had opened an investigation. Dr. Manion on his own initiative pursued a comprehensive psychological evaluation from Edwin Carter, Ph.D.; the evaluator concluded that Dr. Manion was not suffering from a delusional disorder and opined that Dr. Manion should be permitted to retain his unrestricted medical license.

The Medical Board did not accept the conclusions of Dr. Carter and on October 12, 2011, ordered Dr. Manion to undergo an assessment by the North Carolina Physicians Health Program (PHP). Dr. Manion submitted, under protest, to an assessment by PHP evaluator Dr. Pendergast, who opined that Dr. Manion was mentally ill and that his mental illness preceded his employment at Camp Lejeune. On December 13, 2011, PHP and Dr. Pendergast recommended that Dr. Manion complete a comprehensive psychological assessment at one of two out-of-state

2

mental health evaluation and treatment facilities, and further recommended that Dr. Manion not practice medicine until after he received his evaluation and any required treatment.

On January 19, 2012, the Medical Board voted to order Dr. Manion to undergo evaluation and treatment at one of the recommended out-of-state facilities pursuant to N.C. Gen. Stat. 90-14(a)(5), and served Dr. Manion with the order for assessment on February 27, 2012. Dr. Manion then unsuccessfully sought a restraining order against the Medical Board in state court to prevent it from taking action against him. On October 10, 2012, the Medical Board brought formal charges against Dr. Manion for his failure to cooperate with the PHP, seeking discipline against Dr. Manion. In January 2013, Dr. Manion submitted to another evaluation, this time by Barry Rosenfeld, Ph.D. and Paul Appelbaum, M.D. in New York. Dr. Appelbaum concluded that Dr. Manion was delusional, which conclusion Dr. Manion has alleged was based not on medical evidence or corroborative fact checking but on Dr. Appelbaum's *ex parte* conversation with Dr. Pendergast.

On February 7, 2013, the Medical Board through its counsel informed Dr. Manion that, based on the findings of Drs. Pendergast and Appelbaum, in order to avoid a public sanction finding him incapable of practicing medicine with reasonable skill and safety by reason of mental illness, Dr. Manion must inactivate his own license. Dr. Manion did inactivate his medical license on February 9, 2013.

Dr. Manion filed this action to "protect his property and due process rights" alleging that he "has been, and continues to be, damaged due to the arbitrary and unlawful application of summary suspension procedures by the North Carolina Medical Board that result from intentionally and/or negligently abusive practices by the North Carolina Physicians Health Program, Inc. [] and Warren Pendergast, M.D. . . .". [DE 2 ¶ 1]. His complaint alleges claims

3

under 42 U.S.C. § 1983 for violation of his procedural and substantive due process rights under the Fifth and Fourteenth Amendments and unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments; conspiracy to interfere with civil rights under 42 U.S.C. § 1985; violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; as well as state law claims for intentional and negligent infliction of emotional distress and medical malpractice.

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. The Medical Board and PHP defendants specifically have raised immunity and statute of limitations defenses.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

4

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When personal jurisdiction has been challenged on the papers alone, the plaintiff must make a prima facie case showing that personal jurisdiction exists, and a court construes all facts and inference in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

I.    MOTION TO DISMISS BY THE NORTH CAROLINA MEDICAL SOCIETY

The complaint fails to state a plausible claim for relief against the North Carolina Medical Society. As alleged in the complaint, the North Carolina Medical Society is a non-profit professional medical association which serves to assist the medical profession in North Carolina in providing safe, quality medical services to its patients. Plaintiff further alleges that a significant number of directors on the PHP's board are appointed by the Medical Board and the Medical Society, that the State of North Carolina through the Medical Board entered into a

5

formal relationship with the Medical Society and the PHP, and that the Medical Society and Medical Board failed and continue to fail to properly oversee and supervise the PHP.

Although the majority of Dr. Manion's claims are alleged against all defendants, the body of the complaint simply fails to allege any specific fact which would support a conclusion that the Medical Society is liable for any wrongdoing. Aside from Dr. Manion's bare allegation that the Medical Society failed to properly oversee and supervise the PHP, the complaint is devoid of any factual enhancement which would support such a conclusion. Moreover, as discussed in the motion to dismiss, the Court is unaware of any legal basis upon which the Medical Society could be held liable for the conduct of individuals it may have appointed to the PHP board of directors. Dr. Manion's response to the motion to dismiss does not identify any factual support alleged in the complaint which would nudge his claim against the Medical Society across the line from conceivable to plausible, but rather asks the Court to allow him to proceed to discovery. In light of the paucity of the allegations alleged against the Medical Society, and in the absence of any request by Dr. Manion to amend his complaint to provide further support for his claims at this time, the Court is constrained to dismiss the complaint against the Medical Society.

II.  MOTIONS TO DISMISS BY THE MEDICAL BOARD, THE PHP & AFFILIATED INDIVIDUALS

Dr. Manion has asserted the following claims against the Medical Board and affiliated individual defendants Henderson, Kirby, Walker-McGill, Camnitz, Walker, Loomis, Huff, and Udekwu[1] and the PHP and affiliated individuals Pendergast, Collins, and Taylor: procedural due process violations based on requiring Dr. Manion to undergo mental health evaluations and coercing him to inactivate his license; systemic procedural due process violations against all licensees wrongly accused of being impaired; substantive due process violations arising out of deprivation of Dr. Manion's rights to bodily integrity, liberty, and property; unreasonable search

---

[1] Improperly denominated at times by plaintiff as Odekwu.

Case 5:16-cv-00063-BO   Document 66   Filed 08/22/16   Page 6 of 22

and seizure in violation of the Fourth Amendment; conspiracy to deprive Dr. Manion of licensure, health care, and equal treatment under 42 U.S.C. § 1985; violation of Title II of the Americans with Disabilities Act; and state law claims for intentional and negligent infliction of emotional distress. Against the PHP and individual defendant Pendergast Dr. Manion has further alleged a state law claim for medical malpractice. Dr. Manion has conceded that dismissal of his state law claims of intentional and negligent infliction of emotional distress against the Medical Board defendants is appropriate. [DE 50 at 24].

The individual Medical Board defendants Henderson, Kirby, and Udekwu have been named in the body of the complaint in their individual and official capacities; defendants Walker-McGill, Camnitz, Walker, Loomis, and Huff have been named in their individual capacities only. [DE 2 ¶¶ 25-29]. The individual PHP defendants Pendergast and Taylor have been named as defendants in their official and individual capacities, while Collins has been named solely in his individual capacity. [DE 2 §§ 24, 30, 31].

A.    Section 1983 Due Process and Fourth Amendment claims.

(1)    *Medical Board and affiliated defendants in their official capacities*

"The Eleventh Amendment bars suit against non-consenting states by private individuals in federal court." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies not only to suits against the State itself but also to suits where "one of [the State's] agencies or departments is named as the defendant." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Hoke v. Bd. of Med. Examiners of State of N. C.*, 445 F. Supp. 1313, 1314 (W.D.N.C. 1978) ("The Board of Medical Examiners is an agency of the State of North Carolina."). State officials sued in their official capacity for damages are also protected by Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir.

7

2003); *see also Bettencourt v. Bd. of Registration In Med. of Com. of Mass.*, 904 F.2d 772, 781 (1st Cir. 1990) (declining to disturb holding that Eleventh Amendment bars claims for damages against medical board and staff in their official capacities and listing cases holding same). Dr. Manion does not dispute that the Medical Board is immune from suit for damages. [DE 50 at 5-6].

In addition to damages, Dr. Manion seeks equitable and injunctive relief against the individual Board members in their official capacities. The doctrine of *Ex parte Young*, 209 U.S. 123, 159-60 (1908), provides an exception to Eleventh Amendment immunity where suit is brought against state officials and "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir.1998). "[A] court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective'" to determine if *Ex parte Young* applies. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citation omitted).

As they relate to the actions taken by members of the Medical Board regarding Dr. Manion's psychiatric and psychological evaluations and the allegedly constructive suspension of his license, Dr. Manion's claims are clearly retrospective. *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999) (*Ex parte Young* "does not apply when the alleged violation of federal law occurred entirely in the past."). Insofar as he has alleged claims for injunctive relief which would direct defendants to take such immediate affirmative steps ensure that the effects of their unconstitutional practices are eliminated and do not continue to adversely affect Dr. Manion or those similarly situated, such relief is also retrospective in nature as it relates not to "ongoing violations of federal law" but rather to "continued effects" and "by-products" of past action.

8

*Caesars Massachusetts Dev. Co., LLC v. Crosby*, No. CIV.A. 13-13144-NMG, 2014 WL

2468689, at *8 (D. Mass. May 30, 2014) (discussing cases). Indeed, where, as here, the effect of

an injunction "would be to undo accomplished state action," such relief is not prospective and

does not fall within the *Ex parte Young* exception. *Republic of Paraguay*, 134 F.3d at 628.

    (2)    *PHP and affiliated defendants in their official capacities*

Eleventh Amendment immunity also extends to suits by private citizens for damages

against alter egos of the state. *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d

1134, 1138 (4th Cir. 1990). In determining whether the PHP, which as alleged is a private, non-

profit organization, is an alter ego of the State of North Carolina, the Court considers:

> (1) whether any judgment against the entity as defendant will be paid by the State
> or whether any recovery by the entity as plaintiff will inure to the benefit of the
> State; (2) the degree of autonomy exercised by the entity, including such
> circumstances as who appoints the entity's directors or officers, who funds the
> entity, and whether the State retains a veto over the entity's actions; (3) whether
> the entity is involved with state concerns as distinct from non-state concerns,
> including local concerns; and (4) how the entity is treated under state law, such as
> whether the entity's relationship with "the State [is] sufficiently close to make the
> entity an arm of the State."

*S. Carolina Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303

(4th Cir. 2008).

Both the allegations in the complaint and the Memorandum of Understanding (MOU)

between the Medical Board, the Medical Society, and the PHP sufficiently establish for purposes

of this motion that the PHP receives state funds and that a judgment against it would cause the

State treasury to be functionally liable.[2] *United States ex rel. Oberg v. Pennsylvania Higher*

*Educ. Assistance Agency*, 745 F.3d 131, 137 (4th Cir. 2014). Dr. Manion alleges that the PHP

---

[2] In deciding the instant motion, the Court has considered the MOU referenced by the complaint
and attached to the motion to dismiss without needing to convert the motion to one for summary
judgment. *See* Fed. R. Civ. P. 10(c); *Am. Chiropractic Assoc. v. Trigon Healthcare, Inc.*, 367
F.3d 212, 234 (4th Cir. 2004).

receives part of its funding from the Medical Board, an undisputed arm of the State, and the MOU illustrates that while the PHP is tasked with seeking to obtain funds from sources other than the State, the Medical Board shall provide funding to the PHP based upon the number of registered physicians in the state. [DE 2 ¶ 20]; [DE 45-1 § 7]. Any judgment against the PHP would be paid at least in part with funds supplied by the State, which is a sufficient showing by the PHP on this first factor.

The second factor further weighs in favor of finding the PHP to be an alter ego of the State, as the Medical Board both appoints PHP board members and retains the power to veto the findings of the PHP. [DE 45-1 § 1; DE 2 ¶ 20]. According to the complaint, the PHP was created to identify and rehabilitate impaired physicians and to protect the public, which is plainly a paramount interest of the State. [DE 2 ¶ 20]. Finally, North Carolina law expressly provides that peer review activities conducted in good faith pursuant to an agreement with the Medical Board are "deemed to be State directed and sanctioned and shall constitute State action . . ." N.C. Gen. Stat. § 90-21.22(f). Although Dr. Manion has alleged that the peer review at issue in this case was conducted in bad faith, his allegations are conclusory and are therefore insufficient. *See Twombly*, 550 U.S. at 555. The weight of the factors clearly tips in favor of holding that the PHP is an alter ego of the State of North Carolina.

Eleventh Amendment immunity therefore bars Dr. Manion's claims against the PHP and Drs. Pendergast and Taylor in their official capacities. As discussed above, Dr. Manion has failed to sufficiently allege that he is seeking prospective injunctive relief, and the *Ex parte Young* exception does not apply. Further, insofar as he has attempted to allege such relief, it is as against the Medical Board defendants and not the PHP defendants.

10

(3) *Medical Board & PHP defendants in their individual capacities*

Dr. Manion's claims against the individual members of the Medical Board and the PHP in their individual capacities are barred by absolute quasi-judicial immunity and qualified immunity.[3]

"Every court of appeals that has addressed the issue has concluded that members of a state medical disciplinary board are entitled to absolute quasi-judicial immunity for performing judicial or prosecutorial functions." *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999) (citing *Butz v. Economou*, 438 U.S. 478, 508 (1978) and listing other cases holding same). This is because

(1) the boards perform essentially judicial and prosecutorial functions; (2) there exists a strong need to ensure that individual board members perform their functions for the public good without harassment and intimidation; and (3) there exist adequate procedural safeguards under state law to protect against unconstitutional conduct by board members without reliance on private damages lawsuits.

*Ostrzenski*, 177 F.3d at 249. Quasi-judicial or prosecutorial immunity under these circumstances has further been extended to the physician who conducts peer review at the request of the Medical Board. *Id.* at 250-51.

---

[3] The individual Medical Board-affiliated defendants who have been sued in their individual capacities argue first that the claims against them are in reality claims against the Medical Board and that they are thus barred by Eleventh Amendment immunity. *See Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014) (citations omitted); *Booth v. State of Md.*, 112 F.3d 139, 142 (4th Cir. 1997). The complaint indeed points to no specific act of any of the individual members of the Medical Board named as defendants, and there can be no real dispute that a judgment against the individual Medical Board defendants would operate against the Medical Board, and therefore the State, or that any actions taken by the individual Medical Board defendants were inextricably tied to their official duties. However, the holding in *Martin* concerned a claim under the Fair Labor Standards Act, and the court of appeals has not clarified whether it would apply to bar suits under § 1983. Thus, the Court declines to apply *Martin* to bar Dr. Manion's claims here. *See Dyer v. Maryland State Bd. of Educ.*, __ F. Supp. 3d. __, No. JKB-15-3699, 2016 WL 2939740, at *7 n. 17 (D. Md. May 20, 2016).

11

Dr. Manion complains that defendants violated his constitutional rights when they failed to establish that he is an imminent threat to himself or the public [DE 2 ¶ 111], failed to conduct a full and meaningful fact-finding investigation, *id.* ¶ 113, and threatened that they would issue a finding that Dr. Manion was incapable of practicing with reasonable skill and safety. *Id.* at ¶ 117. These actions fall within the Medical Board defendants' adjudicative and prosecutorial function to oversee and discipline the medical profession. *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (prosecutorial immunity extends to evaluating evidence). Further, even if the Medical Board defendants failed to perform their duties properly they are entitled to quasi-judicial immunity. *Richter v. Connor*, 21 F.3d 423 *5 (4th Cir. 1994) (unpublished); *see also Bettencourt v. Bd. of Registration In Med. of Com. of Mass.*, 904 F.2d 772, 783 (1st Cir. 1990) ("the act of revoking a physician's license . . . is likely to stimulate a litigious reaction from the disappointed physician, making the need for absolute immunity apparent.").

The members of the PHP and the Medical Board are also protected by qualified immunity. The privilege of qualified immunity protects government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). There is a two-step procedure for determining whether qualified immunity applies which "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Dr. Manion has not sufficiently alleged a constitutional violation.

(i) *Procedural Due Process*

Dr. Manion alleges that defendants "knowingly violated [his] rights by denying him the right to a meaningful pre-depravation hearing because they arbitrarily applied their broad policy

12

of summary suspension of any licensee who failed to comply with PHP, whether or not the licensee is actually fit to practice." [DE 50 at 15].

As alleged in his complaint, Dr. Manion's license was not suspended by the Medical Board, but rather was inactivated by Dr. Manion in exchange for the Medical Board's dismissal of its charges against him for failing to cooperate with the PHP. [DE 2 ¶¶71-76]. "[A] plaintiff may not bypass a seemingly adequate administrative process and then complain of that process's constitutional inadequacy in federal court." *Ashley v. N.L.R.B.*, 255 Fed. App'x 707, 709 (4th Cir. 2007) (listing cases holding same). Indeed, although Dr. Manion alleges that it was a foregone conclusion that his license would be suspended based on a statement made by the Medical Board's chief prosecutor, the Medical Board could have, when presented with Dr. Manion's contrary evidence, found otherwise.

Nor has Dr. Manion sufficiently alleged that the process afforded to him was either unavailable or patently inadequate. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."). Dr. Manion could have proceeded to a hearing wherein he could have appeared with counsel, presented evidence on his own behalf, and cross-examined witnesses. N.C. Gen. Stat. § 90-14.2(a). Dr. Manion further could have appealed any disciplinary sanction to the state superior court. N.C. Gen. Stat. § 90-14.8. Clearly process was available, and no allegation before the Court would support a determination that the process available was patently inadequate. *See Fralin v. Cty. of Bucks*, 296 F. Supp. 2d 609, 614 (E.D. Pa. 2003) (dismissal of due process claim appropriate where plaintiff had alleged procedures are a sham, but failed to allege concrete evidence that process would be futile, including that later stages, such an appeal

13

to the state court, would also be biased). Dr. Manion's failure to avail himself of the process provided by the Medical Board thus means that he has failed to state a procedural due process claim. *Ashley*, 225 Fed. App'x. at 710.

      (ii)    *Substantive Due Process*

Dr. Manion has further failed to state a substantive due process claim. Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (internal quotation and citation omitted). In cases such as this, where the substantive due process claim involves executive as opposed to legislative action, the Court must determine first the threshold issue of "whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Nothing in Dr. Manion's complaint can be fairly said to shock the contemporary conscience. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *City of Sacramento*, 523 U.S. at 849. The State plainly has an important interest in regulating the professionals who provide medical care to its citizens. *Harper v. Pub. Serv. Comm'n of W.VA.*, 396 F.3d 348, 353 (4th Cir. 2005). As Dr. Manion has alleged in his complaint, the members of the Medical Board had concern about Dr. Manion's fitness to practice medicine, based at least in part on the report of a concerned member of the Wilmington Police Department and two physicians. Dr. Manion has failed to allege that the conduct of the Medical Board, the PHP, or their members was unjustifiable by any governmental interest, and he cannot therefore state a substantive due process claim.

## (iii) *Fourth Amendment*

Dr. Manion's Fourth Amendment claim for unwarranted search and seizure also fails. Section 1983 actions are subject to the relevant state's statute of limitations for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In North Carolina, the relevant statute of limitations is three years. N.C. Gen. Stat. § 1-52 (5). "The limitations period for a § 1983 claim begins to run when the plaintiff has a complete and present cause of action—in other words, when it could have filed suit and obtained relief." *Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 67 (4th Cir. 2015) (internal quotation, alteration, citation omitted). Dr. Manion's complaint identifies psychological testing and evaluation which occurred in 2011 and January 2013 as the bases for his Fourth Amendment claim; his complaint was filed in February 2016, beyond the limitations period.[4] His Fourth Amendment claim therefore fails, and the Medical Board and PHP defendants are alternatively entitled to qualified immunity.

## (B) Section 1985 Conspiracy claim.

In order to plead a conspiracy in violation of § 1985,

a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citation omitted). A conspiracy alleged in a conclusory manner and without concrete supporting facts must be dismissed. *Id.* at 1377. Dr. Manion's conspiracy claim alleges generally that the Medical Board defendants and PHP defendants have acted in concert to deprive Dr. Manion and others of their constitutional rights. Dr. Manion alleges that the PHP has exceeded its authorization to act and that the Medical Board

_____

[4] Dr. Manion argues in response that he was ordered to undergo an evaluation in 2015, but he does not allege in his complaint that he was actually examined or evaluated in 2015.

15

has developed a policy or practice of automatic ratification of the PHP's recommendations. [DE 2 ¶ 169].

Dr. Manion's claims fail to allege any concrete supporting facts which would support the presence of a conspiracy. Dr. Manion fails to allege an agreement or meeting of the minds or any evidence of invidious discriminatory animus, and indeed in his response to the instant motion he notes that he has "weave[d] a suggestion throughout his allegations" which would support his conspiracy claim. [DE 50 at 21]. This is simply insufficient to satisfy Dr. Manion's weighty burden to establish a civil rights conspiracy. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

(C)    Title II ADA claim.

Dr. Manion alleges that defendants discriminated against him because they regarded him as having a disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Dr. Manion argues that Title II of the Americans with Disabilities Act (ADA) abrogates Eleventh Amendment immunity and subjects defendants to liability for violating Dr. Manion's rights because they wrongly regarded him as disabled.

Although it is not clear whether Title II of the ADA abrogates states' sovereign immunity in this context, *see United States v. Georgia*, 546 U.S. 151, 159 (2006), the Court need not conduct such analysis because, even if it were to find that sovereign immunity has been abrogated, Dr. Manion's ADA claim is time-barred. Title II of the ADA does not provide a statute of limitations, so the statute of limitations for the most analogous state-law claim is

16

applied. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). For non-employment related claims, the most analogous statute of limitations in North Carolina is two years. *See J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439, at \*6 (E.D.N.C. Sept. 24, 2012) (unpublished) (citing North Carolina's Persons with Disabilities Protection Act, N.C. Gen. Stat. §168A-12). While state law determines the period of limitations, federal law controls when a claim accrues, which in civil rights cases is when the plaintiff knows or has reason to know of the injury which forms the basis of his claim. *A Soc'y Without A Name*, 655 F.3d at 348.

Here, Dr. Manion knew of the injury which forms the basis of his claim at the very latest on February 9, 2013, when he inactivated his medical license. Dr. Manion filed this suit on February 8, 2016, one year beyond the two-year limitations period. In response to this argument, Dr. Manion contends that the general, catch-all limitations period of four years, applicable to any civil action arising under an Act of Congress after December 1, 1990, should apply to his claim. 28 U.S.C. § 1658(a). Dr. Manion contends that his ADA claim is based on the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, and that the four-year statute of limitations therefore applies.

In order to determine whether the two or four year limitations period applies, the Court must determine if Dr. Manion's ADA claim "was made possible by" the 2008 amendment to the ADA. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Prior to the 2008 Amendment, disability was defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482 (1999) (citing prior version of ADA at § 12102(2)(A)). Dr. Manion contends that his ADA claim was made possible by the 2008 amendment which allows him to proceed as

17

having been regarded as having a disability, whether or not his impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A). Thus, Dr. Manion contends, under the 2008 Amendment he no longer has to demonstrate whether the disability he was perceived to have limits a major life activity.

That the 2008 Amendment made Dr. Manion's claim easier to demonstrate, does not, however, equate to a finding that his claim was made possible by the 2008 Amendment. On the contrary, prior to the 2008 Amendment, disability was defined to include being regarded as having an impairment, Pub. L. 101-336, 104 Stat 327, and mental illness was expressly considered to be a disability under the ADA. *See, e.g., Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir.); *Pathways Psychosocial v. Town of Leonardtown, MD*, 133 F. Supp. 2d 772, 781 (D. Md. 2001) (parties do not dispute that mental illness may be considered a disability). Working, which Dr. Manion alleges defendants prevented him from doing as a result of their having regarded him as having a disability, was also considered under the pre-2008 ADA to be a major life activity. *See Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir. 2002) ("In order to be substantially limited in the major life activity of working, 'one must be precluded from more than one type of job, a specialized job, or a particular job of choice.'").

Thus, Dr. Manion's ADA claim was available prior to and did not arise from the ADA Amendments Act of 2008. It is properly governed by a two-year statute of limitations and is time-barred. Dismissal of Dr. Manion's ADA claim as against all defendants for failure to state a claim is therefore appropriate. Moreover, "only public entities are subject to Title II," *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773 (2015), and this claim as alleged against any individual defendant is properly dismissed.

18

(D)     State law claims.

Dr. Manion concedes that his state law infliction of emotional distress claims should be dismissed against the Medical Board defendants, but opposes dismissal of such claims as against the PHP defendants. As discussed above, the North Carolina General Statutes provide that as they relate to activities of the Medical Board, "[p]eer review activities conducted in good faith pursuant to any agreement under this section shall not be grounds for civil action under the laws of this State and are deemed to be State directed and sanctioned and shall constitute State action." N.C. Gen. Stat. § 90-21.22(f).

Dr. Manion argues that the statutory immunity provided by N.C. Gen. Stat. § 90-21.22(f) is not applicable here because the actions taken by the PHP and Dr. Pendergast were not actually peer review activities and because they were conducted in bad faith and with malice. Also as discussed above, Dr. Manion's conclusory allegations of bad faith are insufficient to state a claim. As to his allegation that the PHP and Dr. Pendergast did not actually conduct a peer review, the Court cannot sanction such a theory in order to impose liability here. The allegations in the complaint reveal that after notification from a member of the community that Dr. Manion's mental health may be impaired, the Medical Board referred plaintiff to the PHP for an assessment which was conducted by Dr. Pendergast. [DE 2 ¶¶ 52-53]. Although Dr. Manion takes issues with the need for an assessment and the results of the assessment, none of his allegations would support a finding that what was conducted by the PHP and Dr. Pendergast was not peer review. *See, e.g., Shannon v. Testen*, 777 S.E.2d 153, 156 (N.C. Ct. App. 2015) (discussing PHP peer review of physician in similar circumstances). Statutory immunity therefore applies to bar Dr. Manion's state law tort claims against the PHP and affiliated individual defendants in their official capacities.

19

(i)     Infliction of emotional distress

Dr. Manion's claims for infliction of emotional distress as to Drs. Taylor and Collins in their individual capacities fail to allege any specific conduct by either of these defendants, and thus fail to satisfy Rule 8's requirement that a defendant have fair notice of the claims against him. Fed. R. Civ. P. 8(a); *see, e.g., Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (particularly important in suits against a government agency and a number of actors "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*" in order to provide fair notice of the basis of the claims).

Dr. Manion's claims for infliction of emotional distress as to Dr. Pendergast similarly fail. Although Dr. Pendergast is referred to as having taken specific actions against Dr. Manion in the complaint, Dr. Pendergast's allegedly harmful evaluation of Dr. Manion occurred on December 5, 2011, well more than three years prior to the filing of the instant complaint. Claims for infliction of emotional distress under North Carolina law are subject to a three year statute of limitations, and such claims accrue when the plaintiff becomes or reasonably should have become aware of the injury. *Russell v. Adams*, 125 N.C. App. 637, 641 (1997).

Dr. Manion's allegations in his complaint make clear that he was aware that Dr. Pendergast's evaluation had caused him injury following the Medical Board's decision, based allegedly solely on Dr. Pendergast's evaluation, to order him to undergo further evaluation and treatment. [DE 2 ¶ 68]. Indeed, Dr. Manion sought a restraining order and a preliminary injunction against the Medical Board to prevent such action by filing a complaint in New Hanover County Superior Court in April 2012.[5] [DE 2 ¶ 69]; [DE 45-3]. The New Hanover County complaint specifically references Dr. Pendergast's evaluation, specifically alleging that

---

[5] The Court has considered Dr. Manion's complaint filed in New Hanover County as it was referenced in the complaint and is part of the public record. See Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

after December 5, 2012, Dr. Manion was aware that Dr. Pendergast and the PHP were going to recommend to the Medical Board that he discontinue his medical practice pending completion of an inpatient assessment. [DE 45-3 ¶ 34]. Thus, contrary to Dr. Manion's assertion that his infliction of emotional distress claims did not begin to accrue until he received a copy of Dr. Pendergast's report in 2015, his claims accrued at the lasted in April 2015, and they are therefore barred by the applicable statute of limitations.

(ii) *Medical Malpractice*

The same analysis applies to Dr. Manion's claim for medical malpractice against Dr. Pendergast. The parties agree that the applicable medical malpractice statute of limitations is three years. *See, e.g., Hussey v. Montgomery Mem'l Hosp., Inc.*, 114 N.C. App. 223, 226 (1994). Dr. Manion contends that his injury was latent until he surrendered his medical license in February 2013, and that he could not have known that Dr. Pendergast's peer review was in actuality a diagnostic report until he received a copy of the report in August 2015. *See, e.g., Black v. Littlejohn*, 312 N.C. 626, 645 (1985) (discussing discovery rule applied to latent injuries).

As discussed above, Dr. Manion plainly was aware that Dr. Pendergast's peer review had caused him alleged injury, at least as of the filing of his complaint in New Hanover County in April 2012. His medical malpractice claim is therefore time-barred.

## CONCLUSION

In summary, Dr. Manion's complaint concerns actions by the Medical Board and PHP which began in 2011. While the events at issue have culminated in Dr. Manion's inactivation of his license in 2013, his injuries plainly accrued earlier, as is evidenced by his own action in seeking relief from the state court. Insofar as they are not time-barred, defendants' immunity

21

defenses further preclude advancement of Dr. Manion's claims, as does his failure to plead plausible claims for relief. Finally, because Dr. Manion's claims that he brings to remedy alleged violations against himself are subject to dismissal, any claim brought on behalf of others similarly situated must be dismissed as well.

Accordingly, for the foregoing reasons, the motions to dismiss [DE 41, 43, 45] are GRANTED. The motions to stay discovery [DE 59, 61] are DENIED AS MOOT. This action is DISMISSED in its entirety.

SO ORDERED, this __19__ day of August 2016.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

Case 5:16-cv-00063-BO  Document 66  Filed 08/22/16  Page 22 of 22